## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM MARTIN, *individually and on behalf of all others similarly situated*,

      Plaintiff,

v.

YOUNG CONSULTING, LLC, *d/b/a* CONNEXURE,

      Defendant.

Case No.: _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff William Martin ("Plaintiff"), by and through his undersigned counsel, hereby files this Class Action Complaint individually and on behalf of a class of all similarly situated persons against Defendant Young Consulting, LLC d/b/a Connexure ("Defendant" or "Young Consulting"). Plaintiff bases the following allegations upon information, belief, and investigation of counsel, except as to the allegations specifically pertaining to him, which are based upon personal knowledge.

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Young Consulting for its failure to properly secure and safeguard individuals' highly valuable personally identifiable information ("PII") and protected health information ("PHI") including, *inter alia*,

individuals' names, Social Security numbers, dates of birth, insurance policy information, and insurance claim information.

2.     Businesses that handle PII and PHI owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that its exposure to unauthorized persons—especially to hackers with nefarious intentions—will result in harm to the individuals to whom the information relates.

3.     The harm resulting from a data privacy breach manifests in a number of ways, including identity theft and financial fraud. The exposure of a person's PII or PHI through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and take a number of additional prophylactic measures.

4.     Young Consulting is a company that provides "software solutions for the marketing, underwriting and administering of medical stop loss insurance."[1] Young Consulting's software is marketed to and used by insurance companies,

---

[1] Young Consulting, https://youngconsulting.com/ (last visited Oct. 11, 2024).

insurance brokers, and third-party administrators who process and handle insurance claims (collectively, Young Consulting's "clients").[2]

5.      In order to provide these services to its clients, Young Consulting is entrusted with the PII and PHI of its clients' insureds. As Defendant is or should have been aware, these types of personal and sensitive data are highly targeted by hackers who seek to exploit that data for nefarious purposes. In the wrong hands, these types of sensitive data may be wielded to cause significant harm to Plaintiff and Class Members.

6.      By collecting and storing individuals' PII and PHI, Young Consulting has a resulting duty to secure, maintain, protect, and safeguard the PII and PHI with which it has been entrusted against unauthorized access and disclosure through reasonable and adequate data security measures. Defendant is also well-aware that PII and PHI are highly valuable to cybercriminals, making it highly foreseeable that Young Consulting would be the target of a cyberattack.

7.      Despite Young Consulting's duty to safeguard the PII and PHI with which it is entrusted, and the foreseeability of a data breach, Plaintiff's and Class Members' sensitive information stored by Young Consulting was accessed and acquired by unauthorized third parties during a data breach that occurred on or

---

[2] *Id.*

around April 10–13, 2024 (the "Data Breach" or "Breach").[3] The Data Breach resulted in the unauthorized access and exfiltration of the PII and PHI of approximately 950,000 individuals.

8.    As a direct and proximate result of Defendant's failure to implement and follow basic, standard security procedures, Plaintiff's and Class Members' PII and PHI is now in the hands of cybercriminals and has been exposed to an untold number of unauthorized individuals.

9.    Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, and similar forms of criminal mischief— risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

10.    Plaintiff, on behalf of himself and the Class as defined herein, brings claims for negligence, negligence *per se*, and declaratory judgment, seeking damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

---

[3]    *Notice Letter*, Young Consulting (Aug. 26, 2024), available at: https://www.maine.gov/cgi-bin/agviewerad/ret?loc=1188.

11.    To recover from Defendant from these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: (1) investigate and disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; (2) implement improved data security practices to reasonably guard against future breaches of PII and PHI possessed by Defendant; and (3) provide, at Defendant's own expense, all impacted victims with lifetime identity protection services.

## **PARTIES**

12.    Plaintiff William Martin is an adult who, at all relevant times, is and was a citizen of the State of California.

13.    Defendant Young Consulting, LLC, publicly doing business as Connexure,[4] is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who are members of the LLC and who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this

---

[4] Business Wire, *Young Consulting Rebrands to Connexure*, Yahoo Finance (Apr. 22, 2024), https://finance.yahoo.com/news/young-consulting-rebrands-connexure-113000332.html; *About Us*, Connexure, https://connexure.co/about-us/ (last visited Oct. 11, 2024).

complaint to reflect the true names and capacities of such other responsible parties when their identities become known, including the members of the LLC. Upon information and belief, Defendant is a citizen of the State of Georgia.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

15.    This Court has personal jurisdiction over Defendant, as, at all relevant times, Defendant engaged in substantial business activities in Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District, Defendant conducts substantial business within this District, and Defendant has harmed Class Members residing in this District.

## FACTUAL BACKGROUND

**A. Defendant Collected and Stored Plaintiff's and Class Members' PII and PHI.**

17.    Young Consulting is a software as a service ("SaaS") company that provides integrated software for its clients—including insurance companies, insurance brokers, and third-party administrators who process and handle insurance claims—in the medical stop loss insurance marketplace.[5] Young Consulting serves clients nationwide.

18.    In April 2024, Young Consulting rebranded and has since been doing business as Connexure.[6]

19.    Upon information and belief, during the regular course of administering its services, Young Consulting receives, creates, maintains, and handles individuals' PII and PHI. This information includes, *inter alia*, individuals' names, Social Security numbers, dates of birth, insurance policy information, and insurance claim information.

20.    Plaintiff and Class Members directly or indirectly entrusted Young Consulting with their sensitive and confidential PII and PHI and, therefore, reasonably expected that Defendant would safeguard their highly sensitive PII and keep their PHI confidential.

---

[5] Young Consulting, *supra* note 1.
[6] *See supra* note 4.

21.     Due to the sensitivity of the PII and PHI that Young Consulting handles, collects, and stores, it is or should have been aware of its critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

22.     By obtaining, collecting, and storing Plaintiff's and Class Members' PII and PHI, Young Consulting assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

23.     Despite the existence of these duties, Young Consulting failed to implement reasonable data security measures to protect Plaintiff's and Class Members' PII and PHI, and ultimately allowed nefarious third-party hackers to compromise Plaintiff's and Class Members' PII and PHI.

**B.     Defendant is Subject to HIPAA as a Business Associate.**

24.     The Health Insurance Portability and Accountability Act ("HIPAA") circumscribes security provisions and data privacy responsibilities designed to keep individuals' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for

electronic transactions and code sets to maintain the privacy and security of protected health information.[7]

25.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is properly maintained.[8]

26.    HIPAA applies to two types of entities: "covered entities," such as a health care provider, a health plan, or healthcare clearinghouse; and "business associates" who are engaged by covered entities to help it carry out its healthcare activities. *See* 45 CFR § 160.103.

27.    Upon information and belief, Young Consulting is a "business associate" that is subject to HIPAA, because it receives, maintains, and electronically transmits PHI from employee health plans to assist them in the carrying out of healthcare-related functions.[9]

---

[7] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[8] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

[9] *See* 45 CFR § 160.103; *see also* Office for Civil Rights, *Business Associates*, U.S. Dep't of Health & Hum. Servs. (May 24, 2019), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/business-associates/index.html (a third-party administrator is listed as a typical type of business associate under HIPAA).

28.    Under HIPAA, Young Consulting is required to implement adequate safeguards to prevent unauthorized use or disclosure of PHI, including by implementing requirements of the HIPAA Security Rule.[10] Young Consulting is further required to report any unauthorized use or disclosure of PHI, including incidents that constitute breaches of unsecured protected health information as in the case of the Data Breach complained of herein.[11]

29.    Due to the nature of Young Consulting's business, it would be unable to engage in regular business activities without collecting and aggregating individuals' PHI that it knows and understands to be sensitive and confidential.

30.    Despite this duty to safeguard Plaintiff's and Class Members' PHI, Young Consulting employed inadequate data security measures to protect and secure the highly valuable and confidential information with which it was entrusted, resulting in the Data Breach and subsequent compromise of Plaintiff's and Class Members' PII.

31.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PHI, Young Consulting assumed legal and equitable duties and

---

[10] The HIPAA Security Rule establishes national standards to protect individuals' electronic personal health information that is created, received, used, or maintained by a covered entity. The Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information. *See* 45 C.F.R. Part 160 and Part 164, Subparts A and C.

[11] *See* Breach Notification Rule, 45 CFR §§ 164.400–414.

knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PHI from unauthorized disclosure.

32.     Further, given the application of HIPAA, and that Plaintiff and Class Members directly or indirectly entrusted their PHI to Young Consulting in order to directly or indirectly receive its medical stop loss insurance benefits and services, Plaintiff and Class Members reasonably expected that Young Consulting would safeguard their highly sensitive information and keep their PHI confidential.

**C.     Defendant Knew the Risks of Storing Valuable PII and PHI.**

33.     Young Consulting was well aware at all relevant times that the PII and PHI that it collects, stores, creates, and maintains is highly sensitive and of significant value to those who seek to use it for wrongful purposes.

34.     Young Consulting also knew that a breach of its systems, and the resulting exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private health information.

35.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S. In 2023, there were 6,077 recorded data breach incidents, exposing seventeen billion records. The

United States specifically saw a 19.8% year-over-year increase in data breaches as compared to 2022.[12]

36.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[13]

37.    PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data, as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[14]

38.    The healthcare industry, specifically, has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[15] Indeed, "[t]he IT environments of healthcare organizations are often complex and

---

[12] *2024 Global Threat Intelligence Report*, Flashpoint (Feb. 29, 2024), https://go.flashpoint.io/2024-global-threat-intelligence-report-download.

[13] *Insurance Information Institute, Facts & Statistics: Identity Theft and Cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Oct. 11, 2024).

[14] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

[15] *The Healthcare Industry is at Risk*, SwivelSecure https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Oct. 11, 2024).

difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific—and now obsolete—operating systems and cannot be transferred to supported operating systems."[16]

39.     PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement. Cybercriminals seek out PHI at a greater rate than other sources of personal information. Between 2009 and 2022, 5,150 healthcare data breaches of 500 or more individuals have been reported to Health and Human Services' Office of Civil Rights, resulting in the exposure or unauthorized disclosure of the information of 382,262,109 individuals—a whopping number which "equates to more than 1.2x the population of the United States."[17]

40.     As such, major, high-profile breaches have occurred in recent years at healthcare industry partner and provider companies including Anthem, Inc. (affecting 78.8 million individuals in 2015); American Medical Collection Agency

---

[16] Steve Alder, Editorial: *Why Do Criminals Target Medical Records*, HIPAA Journal (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/#:~:text=Medical%20records%20contain%20highly%20sensitive,used%20for%20extortion%20and%20blackmail.

[17] *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited Oct. 10, 2024).

(affecting more than twenty-six million individuals in 2019); Premera Blue Cross (affecting eleven million individuals in 2015); CareSource (affecting more than three million individuals in 2023); Excellus Health Plan, Inc. (affecting ten million individuals in 2015); and more.[18]

41.    In fact, "[a]n unwanted record was set in 2023 with 725 large security breaches in healthcare reported to the Department of Health and Human Services Office for Civil Rights, beating the record of 720 healthcare security breaches set the previous year."[19] In 2023 alone, about one-third of Americans were affected by health-related data breaches.[20]

42.    The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to medical fraud, identity theft, tax fraud, credit and bank fraud, and more.

43.    **Social Security Numbers**—Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the

---

[18] *Healthcare Data Breach Statistics*, The HIPAA Journal (May 23, 2024), https://www.hipaajournal.com/healthcare-data-breach-statistics.
[19] Steve Alder, *Security Breaches in Healthcare in 2023*, The HIPAA Journal (January 31, 2024), https://www.hipaajournal.com/wp-content/uploads/2024/01/Security_Breaches_In_Healthcare_in_2023_by_The_HIPAA_Journal.pdf.
[20] Ken Alltucker, *Health Care Data Breaches Hit 1 in 3 Americans Last Year: Is Your Data Vulnerable?*, USA Today (Feb. 19, 2024), https://www.usatoday.com/story/news/health/2024/02/18/health-data-breaches-hit-new-record-2023/72507651007/.

aftermath of a breach—unique social security numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

44.    The Social Security Administration warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[21]

45.    Social Security Numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often

---

[21] *Identify Theft and Your Social Security Numbers*, Social Security Admin. (June 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.

social security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes social security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

46.     **Health Insurance Information**—"stolen personal health insurance information can be used by criminals to obtain expensive medical services, devices and prescription medications, as well as to fraudulently acquire government benefits like Medicare or Medicaid."[22]

47.     In fact, there are even guides, tutorials, and documentation available on the dark web to assist novice cybercriminals in conducting health insurance fraud.[23]

48.     This type of fraud, known as medical identity theft, can be hard to spot and even harder to recover from—"[t]he average person may have no idea a problem like this can arise until long after a theft occurs."[24]

---

[22] Kate O'Flaherty, *Why cyber-Criminals Are Attacking Healthcare -- And How to Stop Them*, Forbes (Oct. 5, 2018), https://www.forbes.com/sites/kateoflahertyuk/2018/10/05/why-cyber-criminals-are-attacking-healthcare-and-how-to-stop-them/?sh=54e8ed1e7f69.

[23] *Unveiling Insurance Fraud on the Dark Web*, Dark Owl (Apr. 25, 2024), https://www.darkowl.com/blog-content/unveiling-insurance-fraud-on-the-dark-web/.

[24] Michelle Andrews, *Someone Could Steal Your Medical Records and Bill You for Their Care*, NPR (July 26, 2023), https://www.npr.org/sections/health-shots/2023/07/26/1189831369/medical-identity-fraud-protect-yourself.

49.     As Eva Velasquez, president and CEO of the Identity Theft Resource Center, explains, a "majority of victims find out when they're trying to move on with their lives, if bills have gone to collections."[25] Additionally, as cybersecurity experts at the American Hospital Association have noted:

> [T]he personal information in people's medical records may be sold in bulk to criminals who create phony providers to submit fraudulent claims on a mass scale that can result in hundreds of millions of dollars in Medicaid, Medicare, or other insurance fraud. Or they may use the information to create fake identities to apply for loans, mortgages, or credit cards.[26]

50.     Medical identity theft causes tens of billions of dollars in losses annually.[27]

51.     Even in situations where stolen PII and PHI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attacks, the criminal uses the previously obtained PII and PHI about the individual, such as name, address, email address, and affiliations, to gain trust and

---

[25] *Id.*

[26] *Id.*

[27] *Health Care Fraud*, FBI, https://www.fbi.gov/investigate/white-collar-crime/health-care-fraud (last visited Oct. 11, 2024).

increase the likelihood that a victim will be deceived into providing the criminal with additional information.

52.    Based on the value of individuals' PII and PHI to cybercriminals, Young Consulting knew or should have known, the importance of safeguarding the PII and PHI with which it was entrusted and of the foreseeable consequences if its data security systems were breached. Young Consulting failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

**D.    Defendant Breached its Duty to Protect PII and PHI.**

53.    On August 26, 2024, Young Consulting posted a notice of the Data Breach on its website and began to file notifications of the Breach with the requisite authorities.[28]

54.    At or around this time, Young Consulting also began to send notification to affected individuals (the "Notice Letter"). In the Notice Letter, Young Consulting states that it is providing notice "on behalf of Blue Shield of California ("Blue Shield") and/or other covered entities,"[29] though those "other covered entities" have yet to be revealed.

55.    Young Consulting describes the circumstances surrounding the Data Breach as follows:

---

[28] *Notice Letter*, *supra* note 3.
[29] *Id.*

18

*What Happened?* On April 13, 2024, Young Consulting became aware of technical difficulties in our computer environment. We immediately took certain systems offline to contain the incident and launched an investigation, with the assistance of a cybersecurity forensics firm, to determine the nature and scope of the event. The investigation determined that an unauthorized actor gained access to Young Consulting's network between April 10, 2024, and April 13, 2024, and downloaded copies of certain files.[30]

56.    Defendant further indicated that a wide variety of PII and PHI was compromised in the Data Breach, including, individuals' names, dates of birth, Social Security numbers, health insurance policy information, and claim information.[31]

57.    Based on Defendant's own statements, cybercriminals intentionally accessed Defendant's computer systems in an attack designed to access Plaintiff's and Class Members' valuable PII and PHI stored therein, and that these malicious attacks were successful in the attack.

58.    Notably absent from the Notice Letter is any information about the type of cyberattack to which Young Consulting fell victim, any identification of the perpetrators, and any further information about the nature of the Data Breach. However, in early May, a ransomware gang claimed responsibility for the theft.[32]

---

[30] *Id.*

[31] *Id.*

[32] Ionut Arghire, *950,000 Impacted by Young Consulting Data Breach*, SecurityWeek (Aug. 28, 2024), https://www.securityweek.com/950000-impacted-by-young-consulting-data-breach/.

59.    The cybercriminals posted the below on their dark web "leaks site":[33]



60.    Notably, in this post, the cybercriminals stated that Young Consulting refused to negotiate, even when given an ultimatum.[34]

61.    The cybercriminals have since made the stolen information available for download.[35]

---

[33] *Id.*; Screenshot of BlackSuit's dark web post claiming responsibility for the Data Breach, Ionut Arghire, *950,000 Impacted by Young Consulting Data Breach*, SecurityWeek (Aug. 28, 2024)
[34] Arghire, *supra* note 32.
[35] *Id.*

62.     Regardless of whether Young Consulting refused to negotiate with cybercriminals altogether or eventually paid a ransom in an attempt to ensure deletion of the data, criminals have no incentive to destroy valuable information that may be monetized in the future. As cybersecurity Brian Krebs has noted:

> Companies hit by ransomware often face a dual threat: Even if they avoid paying the ransom and can restore things from scratch, about half the time the attackers also threaten to release sensitive stolen data unless the victim pays for a promise to have the data deleted. Leaving aside the notion that victims might have any real expectation the attackers will actually destroy the stolen data, new research suggests a fair number of victims who do pay up may see some or all of the stolen data published anyway.[36]

63.     As a direct and proximate result of Defendant's failure to implement and maintain adequate security measures, Plaintiff's and Class Members' PII and PHI are now likely accessible to any fraudster, thief, or other malicious actor who decides to download a digital file. Furthermore, it will be nearly impossible for Plaintiff and the Class to ever ensure that their stolen PII and PHI has been secured and will not be further disseminated.

**E.      Defendant is Obligated Under HIPAA to Safeguard PHI.**

64.     As discussed above, Young Consulting is a business associate and required by HIPAA to safeguard PHI.

---

[36] Brian Krebs, *Why Paying to Delete Stolen Data is Bonkers*, Krebs on Security (Nov. 20, 2020), https://krebsonsecurity.com/2020/11/why-paying-to-delete-stolen-data-is-bonkers/.

65.     Young Consulting is an entity covered by HIPAA, which sets minimum federal standards for privacy and security of PHI.

66.     HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

67.     Under 45 C.F.R. § 160.103, HIPAA defines "protected health information" or PHI as "individually identifiable health information" that is "transmitted by electronic media"; "[m]aintained in electronic media"; or "[t]ransmitted or maintained in any other form or medium."

68.     Under 45 C.F.R. § 160.103, HIPAA defines "individually identifiable health information" as "a subset of health information, including demographic information collected from an individual" that is (1) "created or received by a health care provider;" (2)"[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and (3) either (a) "identifies the individual"; or (b) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual."

69.     HIPAA requires Young Consulting to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the

security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et seq*.

70.    The Department of Health and Human Services Office for Civil Rights recommends the following data security measures that covered entities and business associates like Young Consulting should implement to protect against some of the more common, and often successful, cyber-attack techniques:

a.    Regulated entities should implement security awareness and training for all workforce members and that the training programs should be ongoing, and evolving to be flexible to educate the workforce on new and current cybersecurity treats and how to respond;

b.    Regulated entities should implement technologies that examine and verify that received emails do not originate from known malicious site, scan web links or attachments included in emails for potential threats, and impeded or deny the introduction of malware that may attempt to access PHI;

c.    Regulated entities should mitigate known data security vulnerabilities by patching or upgrading vulnerable technology infrastructure, by upgrading or replacing obsolete and/or unsupported applications and devices, or by implementing safeguards to mitigate known vulnerabilities until an upgrade or replacement can occur;

d.    Regulated entities should implement security management processes to prevent, detect, contain, and correct security violations, including conducting risk assessments to identify potential risks and vulnerabilities to the confidentiality, integrity, and availability of PHI; and

e.    Regulated entities should implement strong cyber security practices by requiring strong passwords rules and multifactor identification.[37]

71.    Upon information and belief, Young Consulting failed to implement one or more of the above recommended data security measures.

72.    While HIPAA permits covered entities to disclose PHI to third parties under certain circumstances, HIPAA does not permit covered entities to disclose PHI to cybercriminals nor did Plaintiff or the Class Members consent to the disclosure of their PHI to cybercriminals.

73.    As such, Young Consulting is required under HIPAA to maintain the strictest confidentiality of Plaintiff's and Class Members' PHI that it creates, receives, and collects, and Defendant is further required to maintain sufficient safeguards to protect that information from being accessed by unauthorized third parties.

74.    Given the application of HIPAA to Young Consulting, and that Plaintiff and Class Members directly or indirectly entrusted their PHI to Defendant, Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information and keep their PHI confidential.

---

[37] *OCR Quarter 1 2022 Cybersecurity Newsletter*, U.S. Dep't Health & Human Services, (Mar. 17, 2022), https://www.hhs.gov/hipaa/for-professionals/security/guidance/cybersecurity-newsletter-first-quarter-2022/index.html.

**F.    Defendant Failed to Comply with FTC Guidelines.**

75.    Young Consulting is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

76.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[38]

77.    In 2016, the FTC updated its publication titled Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses.[39] The guidelines recommend that businesses implement the following:

a.    Businesses should promptly dispose of personal identifiable information that is no longer needed, and retain sensitive data "only as long as you have a business reason to have it;"

---

[38] *See* Federal Trade Commission, *Start with Security: A Guide for Business* (June 2015), available at: https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business.

[39] *See* Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (Oct. 2016), available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

b. Businesses should encrypt sensitive personal information stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;

c. Businesses should thoroughly understand the types of vulnerabilities on their network and how to address those vulnerabilities;

d. Businesses should install intrusion detection systems to promptly expose security breaches when they occur; and

e. Businesses should install monitoring mechanisms to watch for large troves of data being transmitted from their systems.[40]

78. In another publication, the FTC recommended that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[41]

79. Notably, the FTC treats the failure to employ reasonable data security safeguards as an unfair act or practice prohibited by Section 5 of the FTC Act. Indeed, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to

---

[40] *Id.*

[41] *See Start with Security: A Guide for Business*, Federal Trade Commission (June 2015), available at https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business .

confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80.     Upon information and belief, Young Consulting failed to properly implement one or more of the basic data security practices recommended by the FTC. Young Consulting's failure to employ reasonable and appropriate data security measures to protect against unauthorized access to individuals' PII and PHI constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

81.     Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that companies of any size can use to evaluate and improve their information security controls.[42]

82.     NIST publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security controls, network monitoring, breach detection, and incident response.[43] Upon information and belief, Young Consulting failed to adhere to the NIST guidance.

---

[42] *See Framework for Improving Critical Infrastructure Cybersecurity*, National Institute of Standards & Technology (Apr. 16, 2018), App'x A, Table 2, available at https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.
[43] *Id.* at Table 2, 26-43.

83.    The Federal Bureau of Investigation and the Cybersecurity Infrastructure Security Agency also issued a joint cybersecurity advisory ("CSA") on the threat actors responsible for the Data Breach on March 2, 2023, advising companies to implement various cybersecurity measures to prevent and/or mitigate a successful ransomware attack.[44] Upon information and belief, Young Consulting failed to adhere to the data security recommendations in the CSA.

84.    Further, cybersecurity experts have identified various best practices that should be implemented by entities in the healthcare sector, including implementing the following measures to defend against common cyberattacks:

a.    Email protection systems and controls;

b.    Endpoint protection systems;

c.    Identify all users and audit their access to data, application, systems, and endpoints;

d.    Data protection and loss prevention measures;

e.    IT asset management;

f.    Network management;

g.    Vulnerability management;

h.    Security operations center & incident response; and

---

[44]    *#StopRansomware: Blacksuit (Royal) Ransomware*, Cybersecurity & Infrastructure Security Agency (last updated Aug. 27, 2024), https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-061a.

i.    Cybersecurity oversight and governance policies, procedures, and processes.[45]

85.    Upon information and belief, Young Consulting's failure to protect massive amounts of PII and PHI is a result of its failure to adopt reasonable safeguards as required by the FTC guidelines, NIST guidance, CSA guidance, and industry best practices.

86.    Young Consulting was well aware of its obligations to use reasonable measures to protect individuals' PII and PHI. Young Consulting also knew it was a target for hackers, as discussed above. Despite understanding the risks and consequences of maintaining inadequate data security, Young Consulting nevertheless failed to comply with its data security obligations, leading to the compromise of Plaintiff's and Class Members' PII and PHI.

## G.   Plaintiff and Class Members Suffered Damages.

87.    For the reasons mentioned above, Young Consulting's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm in several ways. Plaintiff and members of the Class must immediately devote time, energy, and money to: (1) closely monitor their medical statements, bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they

---

[45] *HICP's 10 Mitigating Practices*, HHS, https://405d.hhs.gov/best-practices (last visited Oct. 11, 2024).

already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

88.     Once PII and PHI are exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly for their entire lives, as a result of Young Consulting's conduct. Further, the value of Plaintiff's and Class Members' PII and PHI has been greatly diminished by its exposure in the Data Breach.

89.     As a result of Young Consulting's failures, Plaintiff and Class Members are also at a substantially increased risk of suffering identity theft and fraud or misuse of their PHI.

90.     With respect to breaches of healthcare and health insurance information, a study has found "the majority [70%] of data impacted by healthcare breaches could be leveraged by hackers to commit fraud or identity theft."[46]

91.     "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly

---

[46] Jessica David, *70% of Data Involved in Healthcare Breaches Increases Risk of Fraud*, Health IT Sec. (Sept. 25, 2019), https://healthitsecurity.com/news/70-of-data-involved-in-healthcare-breaches-increases-risk-of-fraud.

remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[47]

92.     The reality is that cybercriminals seek nefarious outcomes from a data breach, and "stolen health data can be used to carry out a variety of crimes."[48]

93.     Health information in particular is likely to be used in detrimental ways—by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[49]

94.     "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft. Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[50]

95.     Indeed, many victims of medical identity theft are not aware of the theft until long after it occurs; "[s]omeone may apply for a mortgage, for example, and learn their credit is ruined due to unpaid medical bills for care they didn't receive."[51]

---

[47] *Id*.
[48] Andrew Steger, *What Happens to Stolen Healthcare Data?*, HealthTech (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.
[49] *Id*.
[50] *The Potential Damages & Consequences of Medical Identity Theft & Healthcare Data Breaches*, Experian (Apr. 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.
[51] Andrews, *supra* note 24.

96.    Plaintiff and Class Members are at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack, and are subject to further attack so long as Young Consulting fails to undertake the necessary and appropriate security and training measures to protect the PII and PHI with which it was entrusted.

97.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private medical information to strangers.

## H.    Plaintiff's Experience.

98.    Plaintiff's health insurance provider is Blue Shield of California, which, upon information and belief, is a customer of Young Consulting.

99.    Plaintiff provided his PII and PHI to Blue Shield of California in order to receive health insurance. Upon information and belief, Young Consulting provides integrated software solutions to Blue Shield of California and received Plaintiff's PII and PHI in connection with providing those services. In requesting, maintaining, using, and deriving a benefit from Plaintiff's PII and PHI, Young Consulting undertook a duty to act reasonably in its handling of Plaintiff's PII and PHI. Young Consulting, however, did not take reasonable care of Plaintiff's PII and PHI, leading to its exposure and compromise as a direct and proximate result of Defendant's inadequate security measures.

100.   On or about August 26, 2024, Young Consulting began to notify affected individuals, including Plaintiff, that individuals' PII and PHI—including, *inter alia*, names, Social Security numbers, dates of birth, insurance policy information, and insurance claim information—had been compromised as a result of the Data Breach.

101.   Since the announcement of the Data Breach, Plaintiff has been required to spend his valuable time and effort taking steps to mitigate the risk of misuse of his PII. These time intensive mitigation efforts include spending time monitoring his financial accounts, medical accounts, and credit reports for suspicious activity; and spending time changing his passwords to his financial and medical accounts. Plaintiff would not have had to engage in these time intensive efforts but for the Data Breach.

102.   Plaintiff has suffered actual injury from having his PII and PHI exposed and/or stolen as a result of the Data Breach, including: (a) efforts to mitigate the risk of misuse of his PII and PHI; (b) damages to and diminution of the value of his PII and PHI, a form of intangible property that loses value when it falls into the hands of criminals who are using that information for fraud or publishing the information for sale on the dark web; and (c) loss of privacy.

103.   In addition, knowing that hackers accessed and likely exfiltrated his PII and PHI, and that this information likely has been and will be used in the future for

identity theft, fraud, and other nefarious purposes has caused Plaintiff to experience significant frustration, anxiety, worry, stress, and fear.

104.   As a direct and proximate result of the Data Breach, Plaintiff has been and will continue to be at a substantial and certainly impending risk for fraud and identity theft and its attendant damages for years to come. Such a risk is real and certainly impending and is not speculative given the highly sensitive nature of the PII and PHI compromised, stolen, and exposed in the Data Breach.

## **CLASS ALLEGATIONS**

105.   Plaintiff brings this Class Action on behalf of himself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

106.   Plaintiff seeks to represent a Class of persons to be defined as follows:

All individuals in the United States whose PII and/or PHI was compromised in the Data Breach of Young Consulting's systems which occurred on or around April 10 through April 13, 2024 (the "Class").

107.   Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

108.   This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when he moves for class certification as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

109.   **Numerosity:** The members of the Class are so numerous that the joinder of all members is impractical. Plaintiff is informed and believes, and thereon allege, that there are at least hundreds of thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Young Consulting's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes approximately 950,000 individuals.

110.   **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

a.   Whether Young Consulting had a duty to protect the PII and PHI of Plaintiff and Class Members;

b.   Whether Young Consulting was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI, and breached its duties thereby;

c.    Whether Plaintiff and Class Members are entitled to damages as a result of Young Consulting's wrongful conduct; and

d.    Whether Plaintiff and Class Members are entitled to injunctive relief as a result of Young Consulting's wrongful conduct.

111.  **Typicality:** Plaintiff's claims are typical of the claims of Class Members. Plaintiff's and Class Members' claims are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and Class Members each had their PII and PHI exposed and/or accessed by an unauthorized third party.

112.  **Adequacy:** Plaintiff is an adequate representative of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and has no interests antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical, as explained above.

113.  **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

114. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Young Consulting's liability and the fact of damages is common to Plaintiff and each member of the Class. If Young Consulting breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

115. **Injunctive Relief:** Young Consulting has acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

116. **Ascertainability:** Class Members are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Young Consulting's books and records.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

117. Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 116 above as if fully set forth herein.

118.   Young Consulting owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

119.   Young Consulting's duty to use reasonable care arose from several sources, including but not limited to those described below.

120.   Young Consulting had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By receiving, maintaining, and handling PII and PHI that is routinely targeted by criminals for unauthorized access, Young Consulting was obligated to act with reasonable care to protect against these foreseeable threats.

121.   Young Consulting's duty also arose from Defendant's position as a business associate. Young Consulting holds itself out as a trusted healthcare business associate, thereby assuming a duty to reasonably protect the information it obtains from its clients. Indeed, Young Consulting, which receives, maintains, and handles PII and PHI from its clients, was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

122.   Young Consulting breached the duties owed to Plaintiff and Class Members and thus was negligent. Although the exact methodologies employed by

the unauthorized third parties who perpetrated the Data Breach are unknown to Plaintiff at this time, on information and belief, Young Consulting breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; and (f) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII or PHI.

123.   But for Young Consulting's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

124.   As a direct and proximate result of Young Consulting's negligence, Plaintiff and Class Members have suffered injuries, including:

    a.    Theft of their PII and/or PHI;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.     Costs associated with purchasing credit monitoring and identity theft protection services;

d.     Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.     Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.     The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.     Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Young Consulting with the mutual understanding that Defendant would safeguard Plaintiff's and Class

Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Young Consulting fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

125.  As a direct and proximate result of Young Consulting's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and the Class)**

126.  Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 116 above as if fully set forth herein.

127.  Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or

practice by entities, such as Young Consulting, for failing to use reasonable measures to protect PII and PHI. Various FTC publications and orders also form the basis of Defendant's duty.

128.   Young Consulting violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach involving its medical stop loss insurance industry clients.

129.   Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

130.   The harm that has occurred as a result of Young Consulting's conduct is the type of harm that the FTC Act was intended to guard against.

131.   Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

132.   Young Consulting is an entity covered under HIPAA, which sets minimum federal standards for privacy and security of PHI.

133.   Pursuant to HIPAA, 42 U.S.C. § 1302d, *et seq.*, and its implementing regulations, Young Consulting had a duty to implement and maintain reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiff's and the Class Members' electronic PHI.

134.   Specifically, HIPAA required Young Consulting to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et. seq.*

135.   HIPAA also requires Young Consulting to provide Plaintiff and the Class Members with notice of any breach of their individually identifiable PHI "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach." 45 C.F.R. §§ 164.400-414.

136.   Young Consulting violated HIPAA by actively disclosing Plaintiff's and the Class Members' electronic PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PHI; and by failing to provide Plaintiff and Class Members with notification of the Data Breach within 60 days after its discovery.

137.   Plaintiff and Class Members are patients within the class of persons HIPAA was intended to protect, as they are insured or have insurance processed by of Defendant's clients.

138.   The harm that has occurred as a result of Young Consulting's conduct is the type of harm that HIPAA was intended to guard against.

139.   Young Consulting's violation of HIPAA constitutes negligence *per se*.

140.   As a direct and proximate result of Young Consulting's negligence, Plaintiff and Class Members have suffered injuries, including those identified in paragraph 124 above.

141.   As a direct and proximate result of Young Consulting's negligence, Plaintiff and Class Members have been injured as described herein and are entitled to damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

142.   Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 116 above as if fully set forth herein.

143.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statute and state common law as described in this Complaint.

144.   An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and PHI and whether Young

Consulting is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and PHI and remain at imminent risk that further compromises of their PII and/or PHI will occur in the future.

145.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Young Consulting owes a legal duty to secure PII and PHI obtained from its clients' insureds and to timely notify such individuals of a data breach under the common law, Section 5 of the FTC Act, and HIPAA;

b.    Young Consulting breached and continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI; and

c.    Young Consulting's breach of its legal duty continues to cause harm to Plaintiff and the Class.

146.    This Court should also issue corresponding prospective injunctive relief requiring Young Consulting to employ adequate security protocols consistent with law and industry standards to protect individuals' (*i.e.*, Plaintiff's and Class Members') PII and PHI.

147.   If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Young Consulting. The risk of another such breach is real, immediate, and substantial. If another breach at Young Consulting occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

148.   The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Young Consulting if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Young Consulting of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Young Consulting has a preexisting legal obligation to employ such measures.

149.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Young Consulting, thus eliminating the additional injuries that would result to Plaintiff, Class Members, and consumers whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.    For damages in an amount to be determined by the trier of fact;

D.    For an order of restitution and all other forms of equitable monetary relief;

E.    Declaratory and injunctive relief as described herein;

F.    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

G.    Awarding pre- and post-judgment interest on any amounts awarded; and

H.    Awarding such other and further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

A jury trial is demanded on all claims so triable.

47

Dated: October 11, 2024

Respectfully submitted,

*s/ Kristen Tullos Oliver*
Roy E. Barnes
Georgia Bar No. 039000
Kristen Tullos Oliver
Georgia Bar No. 941093
J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Facsimile: 770-227-6373
Email: roy@barneslawgroup.com
Email: ktullos@barneslawgroup.com
Email: ctribble@barneslawgroup.com

Gary F. Lynch*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: gary@lcllp.com

*Pro Hac Petition forthcoming.

***Counsel for Plaintiff and
the Putative Class***